**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------

UNIQUE LOGISTICS INTERNATIONAL (NYC),
LLC

                          Plaintiff,

          v.

BAREND OBERHOLZER a/k/a BARRY
OBERHOLZER and MARCELL FRANCOIS
OBERHOLZER,

                        Defendants.

-----------------------------------------------------------------

Civil Action No. 22-CV-
2313(CBA)(TAM)
ECF CASE

**DEFENDANTS' MEMORANDUM OF LAW IN**
**<u>SUPPORT OF MOTION TO DISMISS COMPLAINT</u>**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................................ 1

BACKGROUND ................................................................................................................. 2

ARGUMENT ..................................................................................................................... 6

    I.     THE COMPLAINT SHOULD BE DISMISSED BASED ON THE
          PENDING ARBITRATION. ................................................................................. 6

    A.    Legal Standard. ................................................................................................. 6

    B.    The Arbitration Clause Compels Dismissal Of The Complaint. ........................... 7

    1.     The Parties Agreed To Arbitrate. ........................................................................ 7

    2.     The Claims Asserted Fall Within The Scope Of The Arbitration Clause. ............. 7

    3.     There Are No Federal Statutory Claims At Issue. ................................................. 9

    4.     All Of The Claims Are Subject To Arbitration And Should Be Dismissed. ......... 9

    II.    THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO to
          State A CLAIM UPON WHICH RELIEF CAN BE GRANTED. ....................... 9

    A.    Legal Standard. ............................................................................................... 10

    B.    Plaintiff Fails To Allege A Basis To Pierce The Corporate Veil And Hold
          Defendants Liable For Claims Only Properly Asserted Against The
          Corporation. ................................................................................................... 11

    C.    Fraud Claims That Are Disguised Contract Claims Must Be Dismissed. ........... 13

    D.    The Allegations Lack The Particularity Required To Plead Fraud. .................... 15

    III.   THIS COURT DOES NOT HAVE PERSONAL
          JURISDICTION OVER THE NON-RESIDENT DEFENDANTS ................... 16

    A.    Legal Standard. ............................................................................................... 16

    B.    This Court Does Not Have Personal Jurisdiction
          Over The Defendants Pursuant To Section 302 Of The CPLR. ......................... 17

    C.    Even If The Court Finds That CPLR 302 Is Satisfied,
          The Exercise Of Personal Jurisdiction Over Defendants
          Does Not Comport With The Requirements Of Due Process. ............................ 19

CONCLUSION ............................................................................................................... 22

i

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*In re Amaranth Natural Gas Commodities Litig.*,
    587 F. Supp. 2d 513 (S.D.N.Y. 2008)..............................................................12, 15

*Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal.*,
    480 U.S. 102 (1987)....................................................................................21

*Ashcroft v. Iqbal*,
    556 U.S. (2009)........................................................................................10

*Ayco Co., L.P. v. Frisch*,
    No. 1:11-CV-580, 2012 U.S. Dist. LEXIS 2112 (N.D.N.Y. January 9, 2012).......................12

*Baptichon v. Nevada State Bank*,
    304 F. Supp. 2d 451 (E.D.N.Y. 2004), aff'd, 125 F. App'x 374 (2d Cir. 2005).....................18

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)....................................................................................10

*Burger King v. Rudzewicz*,
    471 U.S. 462 (1985)....................................................................................20

*Calder v. Jones*,
    465 U.S. 783 (1984)................................................................................17, 20

*Chaiken v. VV Publ'g Corp.*,
    119 F.3d 1018 (2d Cir. 1997).........................................................................20

*Chartis Seguros Mex., S.A. de C.V. v. HLI Rail & Rigging, LLC*,
    967 F. Supp. 2d 756 (S.D.N.Y. 2013)..................................................................9

*Chew v. Dietrich*,
    143 F.3d 24 (2d Cir. 1998).........................................................................17, 20

*Crewe v. Rich Dad Educ., LLC*,
    884 F. Supp. 2d 60 (S.D.N.Y. 2012)...................................................................7

*Currier, McCabe & Assocs. v. Public Consulting Group, Inc.*,
    2014 U.S. Dist. LEXIS 29302 (N.D.N.Y. 2014) .....................................................14

*DeBlasio v. Merrill Lynch & Co., Inc.*,
    No. 07 Civ 318, 2009 WL 2242605 (S.D.N.Y. July 27, 2009) .......................................10, 11

*DiFolco v. MSNBC Cable L.L.C.*,
    622 F.3d 104 (2d Cir. 2010)........................................................................2, 10

*DiVittorio v. Equidyne Extractive Indus., Inc.*,
    822 F.2d 1242 (2d Cir. 1987)...........................................................................11, 16

*Donofrio v. Peninsula Healthcare Servs., LLC*,
    No. C.A. No. N21C-07-122, 2022 Del. Super. LEXIS 141 (Del. Super. Ct.
    April 8, 2022)..............................................................................................................7

*Dover Ltd. v. A.B. Watley, Inc.*,
    No. 04 Civ. 7366, 2006 U.S. Dist. LEXIS 76004 (S.D.N.Y. Oct. 18, 2006) ..........12

*Dunham v. Covidien LP*,
    No. 19 Civ. 2851, 2019 U.S. Dist. LEXIS 206354 (S.D.N.Y. November 27,
    2019) ..........................................................................................................................15

*Eaves v. Designs for Fin., Inc.*,
    785 F. Supp. 2d 229, 246-247 (S.D.N.Y. 2011) .....................................................15

*Ellison v. Am. Image Motor. Co.*,
    36 F. Supp 2d 628, 640 (S.D.N.Y. 1999) ................................................................16

*First Sterling Corp. v. Union Square Retail Trust*,
    102 A.D.3d 490 (1st Dept 2013).............................................................................13

*Forbes v. A.G. Edwards & Sons, Inc.*,
    No. 08 Civ. 552, 2009 U.S. Dist. LEXIS 12894 (S.D.N.Y February 18, 2009).......9

*Glanzer v. Keilin & Bloom LLC*,
    281 A.D.2d 371 (1st Dept 2001)..............................................................................14

*Granda v. Trujillo*,
    No. 18 Civ. 3949, 2019 U.S. Dist. LEXIS 14884 (S.D.N.Y. January 30, 2019)....15

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
    466 U.S. 408 (1984)..................................................................................................20

*Hughes, Hooker & Co. v. Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc.*,
    No. 04 Civ. 1859, 2005 U.S. Dist. LEXIS 11381 (S.D.N.Y. June 9, 2005).............9

*In re Parmalat Sec. Litig.*,
    375 F. Supp. 2d 278 (S.D.N.Y. 2005).......................................................................12

*International Shoe Co. v. Washington*,
    326 U.S. 310 (1945)............................................................................................17, 20

*Jazini v. Nissan Motor Co., Ltd.*,
    148 F.3d 181 (2d Cir. 1998).....................................................................................16

iii

*Keeton v. Hustler Magazine, Inc.*,
    465 U.S. 770 (1984)....................................................................................................20

*Lee v. Engel Burman Grande Care at Jericho, LLC*,
    No. 20-CV-3039, 2021 U.S. Dist. LEXIS 158957 (E.D.N.Y. Aug. 23, 2021)...........................8

*Leemon v. Burns*,
    175 F. Supp. 2d 551 (S.D.N.Y. 2001)..................................................................................16

*Marketxt Holdings Corp. v. Engel & Reiman, P.C.*,
    693 F. Supp. 2d 387 (S.D.N.Y. 2010)..................................................................................11

*Mazza Consulting Group, Inc. v. Canam Steel Corp.*,
    No. 08-CV-38, 2008 U.S. Dist. LEXIS 32670 (E.D.N.Y. Apr. 21, 2008) ...............................8

*Microstrategy Inc. v. Acacia Research Corp.*,
    No. 5735-VCP, 2010 Del. Ch. LEXIS 254 (Del. Ch. 2010)....................................................12

*Millenium Cost., LLC v. Loupolover*,
    44 A.D.3d 1016, N.Y.S.2d 110 (2d Dept. 2007) ...................................................................11

*Milton v. Wazed*,
    No. 16-CV-4542, 2018 WL 2074179 (E.D.N.Y. March 30, 2018) ...........................................19

*Muraco v. Sandals Resorts Int'l*,
    No. 14-CV-4896, 2015 U.S. Dist. LEXIS 172156 (E.D.N.Y December 28,
    2015) .................................................................................................................................18

*Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*,
    975 F. Supp. 2d 392 (S.D.N.Y. 2013)..................................................................................13

*Official Comm. of Unsecured Creditors v. Bay Harbour Master Ltd. (In re BH
    S&B Holdings LLC)*,
    420 B.R. 112 (Bankr. S.D.N.Y. 2009)..................................................................................12

*Papadopoulos v. Tenet Good Samaritan Inc.*,
    No. 08 Civ. 989, 2008 WL 4452345 (S.D.N.Y Oct. 1, 2008) ...............................................19

*Papasan v. Allain*,
    478 U.S. 265 (1986)..........................................................................................................10

*Paraco Gas Corp. v. Ion Bank*,
    No. 20 CV 4971, 2021 U.S. Dist. LEXIS 125358 (S.D.N.Y. July 6, 2021)............................19

*Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*,
    369 F.3d 645 (2d Cir. 2004)................................................................................................6

iv

*Partner Reinsurance Co. v. RPM Mortg., Inc.*,
    No. 18 Civ. 5831, 2020 U.S. Dist. LEXIS 212519 (S.D.N.Y. November 13,
    2020) ...................................................................................................................11

*Polar Intern. Brokerage Corp. V. Reeve*,
    108 F. Supp. 2d 225 (S.D.N.Y. 2000) ...............................................................16

*Provident Bank v. Kabas*,
    141 F. Supp. 2d 310 (E.D.N.Y. 2001) .................................................................8

*Remcoda, LLC v. Ridge Hill Trading*,
    No. 21 Civ. 979, 2022 U.S. Dist. LEXIS 35979 (S.D.N.Y. March 1, 2022) ...........14

*Rosner v. Bank of China*,
    No. 06 CV 13562, 2008 WL 5416380 (S.D.N.Y. Dec. 18, 2008) .........................11

*S.J. Berwin & Co. v. Evergreen Entm't Grp*,
    No. 92 Civ. 6209, 1995 U.S. Dist. LEXIS 15155 (S.D.N.Y October 12, 1995) ...........12

*Sayeedi v. Walser*,
    15 Misc. 3d 621, 835 N.Y.S.2d 840 (Civ Ct, Richmond County 2007) ................20

*Scherk v. Alberto-Culver Co.*,
    417 U.S. 506 (1974) ............................................................................................6

*Sinnett v. Friendly Ice Cream Corp.*,
    319 F. Supp. 2d 439 (S.D.N.Y 2004) ........................................................6, 7, 8, 9

*State Bank of India v. Star Diamonds, Inc.*,
    901 F. Supp. 177,179 (S.D.N.Y. 1995)................................................................7

*Stephens v. Trump Org. LLC*,
    205 F. Supp. 3d 305 (E.D.N.Y. 2016) ................................................................4

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
    559 U.S. 662 (2010)............................................................................................6

*Triton Partners v. Prudential Sec.*,
    301 A.D.2d 411 (1st Dept 2003)........................................................................14

*Tuskey v. Volt Info. Scis., Inc.*,
    No. 00 Civ. 7410, 2001 U.S. Dist. LEXIS 10980 (S.D.N.Y. August 3, 2001)........7

*Twine v. Levy*,
    746 F. Supp. 1202 (E.D.N.Y. 1990) ..................................................................17

*Vander v. Epana Networks, Inc.*
    No. 09 Civ. 4526, 2009 U.S. Dist. LEXIS 66899 (S.D.N.Y. August 3, 2009)........9

*Whitaker v. American Telecasting, Inc.*,
    261 F.3d 196 (2d Cir. 2001)..................................................................................18

*Wiener v. Fireman's Fund Ins. Co.*,
    No. 14-CV-3699, 2015 U.S. Dist. LEXIS 194286 (E.D.N.Y. June 15, 2015) ......................13

*Zhu v. Hakkasan NYC LLC*,
    291 F. Supp. 3d 378 (S.D.N.Y. 2017)..................................................................8

**Other Authorities**

9 U.S.C. § 1 *et seq.*..................................................................................6, 7

Fed. R. Civ. P. Rule 9(b)..................................................................2, 10, 15, 16

Fed. R. Civ. P. Rule 12(b)(6) ..................................................................1, 10

N.Y. CPLR § 301..................................................................................17

N.Y. CPLR § 302..................................................................................17, 18, 19

U.S. Const. amend. XIV, § 1, cl. 3 ..................................................................17

Defendants Barend Oberholzer and Marcell Oberholzer (each individually, a "Defendant" and collectively, the "Defendants") hereby submit this memorandum of law in support of the Defendants' Motion to Dismiss the Complaint filed by Unique Logistics International (NYC), LLC ("Plaintiff" or "Unique") (such complaint, the "Complaint" and such motion, the "Motion"), together with the *Declaration of Howard Steel In Support Of Defendants' Motion To Dismiss*.  In support of the Motion, the Defendants respectfully submit as follows:

## PRELIMINARY STATEMENT

The Complaint is a brazen attempt to circumvent an existing arbitration proceeding between Plaintiff and non-party Jett LLC ("Jett") for Jett's alleged breach of a contract between Plaintiff and Jett.  The claims alleged in the Complaint are unsubstantiated claims for fraud against Defendants who are not even parties to the contract at issue.  The Complaint must be dismissed for at least three reasons.

*First*, the Complaint should be dismissed because Plaintiff already brought an arbitration proceeding with the International Chamber of Commerce (the "ICC") as required by the contract (such proceeding, the "Pending Arbitration").  The Pending Arbitration already includes the same allegations and requested relief set forth in the Complaint—the only difference is that the Pending Arbitration is against Jett instead of Defendants.  This Court should not permit Plaintiff's attempt to side-step the clear terms of the contract and the Pending Arbitration.

*Second*, the Complaint should be dismissed for failure to state a claim under Federal Rule of Civil Procedure ("Rule") 12(b)(6).  Three pleading deficiencies are fatal to the Complaint.  *One*, the allegations are entirely insufficient to "pierce the corporate veil" and hold the Defendants liable for claims asserted against Jett.  *Two*, the Complaint improperly characterizes a contract dispute as a fraud claim.  *Three*, the fraud-based claims lack the requisite particularity that is required

under Rule 9(b).  The Complaint contains threadbare allegations of fraud and clumps together allegations against the Defendants in a way that there is no plausible basis to infer that any Defendant committed any specific fraudulent act.

*Third*, this Court does not have personal jurisdiction over non-resident Defendants with no nexus to New York.

For all these reasons, the Court should dismiss the Complaint in its entirety with prejudice.

## BACKGROUND[1]

### A.  The Charter Services Agreement.

Plaintiff is a New York entity in the business of providing freight forwarding services.[2] Jett is a limited liability company that does business in the State of California.[3] Barend Oberholzer is the Vice President of Jett and Marcell Oberholzer is the Chief Executive Officer of Jett.

On November 26, 2021, Unique entered into a Non-Exclusive Charter Service Agreement Form (the "CSA") with Jett.[4] Under the CSA, Jett agreed to provide flights to Unique (such flights, the "Flights") in exchange for payment of $1,856,000 (the "CSA Payment").[5]

Plaintiff and Jett are the only parties to the CSA.[6] The CSA contains an entire agreement clause.[7] The CSA is governed by Delaware law and expressly provides that any disputes arising out of the CSA are subject to arbitration through the ICC.[8]

The CSA contains several provisions regarding Unique's remedies in the event of

---

[1] Defendants do not admit any allegations asserted in the Complaint, and recite the facts as alleged therein solely for purposes of the Motion.
[2] Compl. ¶ 1.
[3] Compl. ¶¶ 2, 3.
[4] Compl. ¶ 15. Steel Decl. Ex. A.
[5] Compl. ¶ 31, 54, 75.
[6] CSA recitals. In analyzing whether a claim should be dismissed, the court may consider documents attached to the complaint and incorporated by reference. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).
[7] CSA § 10.2.
[8] CSA § 10.11.

unforeseen delays, failure of conditions precedent, and damages.

First, the CSA expressly provides that the **times for flights shown are estimates and not guaranteed** and that Jett shall not bear responsibility for costs incurred as a result of any delay, deviation or diversion of the charter flights.[9] The CSA also provides that no employee, agent or representative of Jett is authorized to bind Jett by any statements or representations of the dates or times of departure, arrival or duration of any flight.[10]  Moreover, under the CSA, Unique is responsible for any expenses, losses, damages or liabilities arising out of any such delay, deviation or diversion.[11]

Second, the CSA provides that "In the event that the Charter Flight will not materialize due to non-fulfillment of any of the aforementioned conditions precedent,[12] for the avoidance of any doubt, Unique and/or any of its representatives and/or any Person on their behalf, will not have any claim and/or demand towards Jett (or the Carrier (as defined in the CSA)) in connection with such non-materialization of the Charter Flight due to non-fulfillment of any of the aforementioned conditions precedent, and Jett and the Carrier shall bear no liability whatsoever in this respect."[13]

Third, the CSA provides that Unique waives any and all special and consequential damages.[14]

### B.  The Arbitration.

On January 5, 2022, Plaintiff filed a Request and Demand for Arbitration (the "Arbitration

---

[9] CSA § 6.2.
[10] CSA § 6.2.
[11] CSA § 6.2.
[12] The CSA provides for two conditions precedent:  (1) obtaining all of the traffic rights, landing permits, necessary work and visa permits, approval of requested slots and handling times, security approvals and all necessary approvals . . . for the fulfillment of the obligations of Jett hereunder; and (2) the availability of suitable loading and offloading equipment and the airport of destination. (CSA §§ 2.3.1, 2.3.2).
[13] CSA § 2.3.
[14] CSA § 8.

Request") with the ICC in accordance with the arbitration clause in the CSA.[15] The Arbitration Request asserts claims against Jett for breach of contract and unjust enrichment alleging that Jett did not schedule the Flights and that Jett kept the CSA Payment.[16] Unique also seeks damages for reimbursement of cargo storage costs due to Jett's alleged breach of the CSA.[17]

On March 10, 2022, Jett filed a response denying the allegations set forth in the Arbitration Request (the "Jett Arbitration Response").[18]  Specifically, Jett denied that it failed to provide the services contracted for under the CSA, noting that it paid carriers for the provision of flights to Unique, but Unique failed to make use of the available flights.[19]  In addition, Jett denied that the CSA provided for any obligation of Jett to provide flights on specific dates or at specific times and asserted that all flights are subject to availability.[20]  Jett also denied the allegations that it made any misrepresentations to Unique regarding its relationship with Astral Aviation ("Astral").  Jett asserted counterclaims against Unique for monies Jett paid to carriers and cancellation penalties incurred due to Unique's failure to use the flights made available by Jett, and other damages, for a total of $2,394,500 plus costs.[21]

On April 13, 2022, Plaintiff filed a response denying the allegations in Jett's counterclaim (the "Unique Arbitration Reply").[22]  Plaintiff then filed an Amended Request and Demand for Arbitration seeking to add claims for fraud, fraudulent inducement and fraudulent misrepresentation (such request, the "Amended Arbitration Request").[23]  Jett opposed Plaintiff's

---

[15] Steel Decl. Ex. B, Arbitration Request.  This Court can take judicial notice of the Pending Arbitration and all documents filed in connection therewith. S*tephens v. Trump Org. LLC*, 205 F. Supp. 3d 305 n.5 (E.D.N.Y. 2016) ("Courts may take judicial notice of filings in arbitration proceedings").

[16] Arbitration Request ¶ 24, 26, 37, 38.

[17] Request for Arbitration ¶ 13, 25, 26, 38.

[18] Steel Decl. Ex. C, Jett Arbitration Response.

[19] Jett Arbitration Response ¶22-33.

[20] Jett Arbitration Response ¶ 17.

[21] Steel Decl. Ex. F, Terms of Reference ¶ 17.

[22] Steel Decl. Ex. D, *See* Unique Arbitration Reply ¶1.

[23] Steel Decl. Ex. E Amended Arbitration Request at 3-9.

4

request to add these new claims to the Pending Arbitration on the basis that they are disguised breach of contract claims which rely on the same alleged breach of conduct as set forth in Unique's breach of contract allegation.[24] Plaintiff also attempted to have the Defendants in their individual capacities added to the Pending Arbitration as additional parties.[25]

One week after the Amended Arbitration Request, Plaintiff filed the Complaint against Defendants in a clear attempt to circumvent the Pending Arbitration.  The Pending Arbitration remains ongoing.

### C. **The Complaint.**

The Complaint asserts three causes of action against Defendants: (1) fraud; (2) fraudulent inducement; and (3) fraudulent misrepresentation.

All of the claims are based on Plaintiff's false narrative that Defendants made misrepresentations on Jett's behalf regarding: (i) Jett's ability to perform under the CSA; (ii) Jett's ability to lease capacity on the Flights; (iii) Jett's relationship to Astral; and (iv) the availability of alternative flights.

Plaintiff seeks judgment in the amount of the CSA Payment plus damages for costs incurred in Hanoi for storage of cargo planned for the Flights with costs, expenses, disbursements, attorneys' fees and interest; *plus* the costs, expenses, disbursements and fees of the instant litigation including attorney's fees and interest.[26]

---

[24] Steel Decl. Ex. F ¶ 17.
[25] Pl's Letter Resp. to Def's Letter Requesting Pre-Motion Conference.
[26] The Complaint states that it seeks "the costs, expenses, disbursements and fees **of this arbitration**."

## ARGUMENT

I. **THE COMPLAINT SHOULD BE DISMISSED BASED ON THE PENDING ARBITRATION.**

### A. Legal Standard.

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (the "FAA") covers contractual arbitration provisions, including the arbitration provision set forth in the CSA.[27]   The FAA was initially enacted to reverse "centuries of judicial hostility to arbitration agreements" and "to place arbitration agreements 'upon the same footing as other contracts.'" *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 510–11 (1974) (citations omitted).   Accordingly, the FAA provides that an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 3.  The "interpretation of an arbitration agreement is generally a matter of state law." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681 (2010).  An existing agreement to arbitrate creates a presumption of arbitrability, meaning that doubts as to its scope—whether the agreement encompasses the claims at issue— "should be resolved in favor of coverage." *See Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 653 (2d Cir. 2004).

The Second Circuit has articulated four criteria for a court to assess in determining whether a litigation should be stayed pending arbitration or dismissed, as the case may be: (1) whether the parties agreed to arbitrate; (2) whether the asserted claims fall within the scope of the arbitration agreement; (3) if federal statutory claims are at issue, whether Congress intended such claims to be non-arbitrable; and (4) if only some of the claims are arbitrable, whether to stay the balance of the proceedings pending arbitration. *Sinnett v. Friendly Ice Cream Corp.,* 319 F. Supp. 2d 439, 443 (S.D.N.Y 2004).  If this Court finds that all the claims are subject to arbitration, then the Court

---

[27] CSA §10.11

may dismiss the claims. *See id.* at 446. (holding that the claims were subject to arbitration and should be dismissed). Courts will apply state law to determine whether a contract to arbitrate has been established for the purpose of the FAA and whether the parties agreed to arbitrate the matter. *See Crewe v. Rich Dad Educ., LLC,* 884 F. Supp. 2d 60, 72 (S.D.N.Y. 2012).

### B.   The Arbitration Clause Compels Dismissal Of The Complaint.

Each of the four factors set forth by the Second Circuit in *Sinnett* are satisfied here. Therefore, the Complaint should be dismissed based on the Pending Arbitration.

#### 1.   *The Parties Agreed To Arbitrate.*

The CSA makes clear that the Plaintiff agreed to the arbitration clause.[28] *Sinnett,* 319 F. Supp. 2d at 443 (citing *Tuskey v. Volt Info. Scis., Inc.*, No. 00 Civ. 7410, 2001 U.S. Dist. LEXIS 10980, at *9 (S.D.N.Y. Aug. 3, 2001)) (citing *State Bank of India v. Star Diamonds, Inc.*, 901 F. Supp. 177, 179 (S.D.N.Y. 1995)) (parties are bound "by the contracts they sign whether or not the party has read the contract so long as there is no fraud, duress or some other wrongful act of the other party."). *See also Donofrio v. Peninsula Healthcare Servs., LLC,* No. C.A. No. N21C-07-122, 2022 Del. Super. LEXIS 141, at *8 (Del. Super. Ct. April 8, 2022) (explaining that under Delaware Law when two parties signed an arbitration agreement, they were bound by that agreement).

Here, there is already a Pending Arbitration covering the dispute at issue, which shows Plaintiff's agreement under the CSA.

#### 2.   *The Claims Asserted Fall Within The Scope Of The Arbitration Clause.*

Claims are entitled to a "presumption of arbitrability which is only overcome if it may be

---

[28] Compl. ¶ 15.

said with positive assurance that the arbitration clause is not susceptible of an interpretation that [it] covers the asserted dispute." *Sinnett,* 319 F. Supp. 2d  at 444 (quoting *Calamia v. Riversoft, Inc.,* No. 02-CV-1094, 2002 U.S. Dist. LEXIS 23855, at *9-10 (E.D.N.Y. 2002)). The CSA includes the following clause:

> If any dispute arises in connection with this agreement, both parties shall make their best effort to settle it amicably. However, if said efforts have been exhausted such disputes shall be finally settled under the rules of conciliation and arbitration of the International Chambers of Commerce.

Courts generally construe arbitration clauses broadly, and this is particularly true where the agreement to arbitrate uses broad language to describe the scope of arbitration. *Zhu v. Hakkasan NYC LLC,* 291 F. Supp. 3d 378, 392 (S.D.N.Y. 2017); *Provident Bank v. Kabas*, 141 F. Supp. 2d 310, 316 (E.D.N.Y. 2001) ("Arbitration clauses couched in language encompassing all disputes 'arising under' or 'in connection with' an agreement are referred to as the 'prototypical broad' arbitration provision justifying a presumption in favor or arbitration").  Such language creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. *Id.*

In addition, although Defendants are not signatories to the CSA, they are still entitled to invoke its protections because the claims asserted are intertwined with the claims in the arbitration. *Lee v. Engel Burman Grande Care at Jericho, LLC,* No. 20-CV-3039, 2021 U.S. Dist. LEXIS 158957, at *12  (E.D.N.Y. Aug. 23, 2021) (finding that where plaintiff's claims against all defendants stemmed from the same alleged conduct, they were "intertwined" with the claims agreed to arbitrate); *Mazza Consulting Group, Inc. v. Canam Steel Corp.*, No. 08-CV-38, 2008 U.S. Dist. LEXIS 32670, at *17 (E.D.N.Y. Apr. 21, 2008) (finding that the merits of the dispute were linked textually to the terms of the contract that included the arbitration clause).

The arbitration clause in the CSA is broad, providing that "any dispute" which arises out of the CSA is subject to arbitration.[29] Plaintiff's claims are centered around <u>Jett's</u> alleged breach of its obligations under the CSA, which irrefutably fall within the scope of the CSA's arbitration clause.

### 3.   *There Are No Federal*
### *Statutory Claims At Issue.*

Because there are no federal statutory claims at issue, the third factor is not applicable here. *Chartis Seguros Mex., S.A. de C.V. v. HLI Rail & Rigging, LLC*, 967 F. Supp. 2d 756, 764 (S.D.N.Y. 2013) (finding no need to examine the factor when no federal statutes were at issue).

### 4.   *All Of The Claims Are Subject To*
### *Arbitration And Should Be Dismissed.*[30]

All of Plaintiff's claims asserted in this litigation are the proper subject of arbitration. *See Sinnett*, 319 F. Supp. 2d at 446 (holding that the claims should be dismissed and the parties should proceed with the pending arbitration proceeding); *C.f.*, *Forbes v. A.G. Edwards & Sons, Inc.*, No. 08 Civ. 552, 2009 U.S. Dist. LEXIS 12894, at *24 (S.D.N.Y February 18, 2009) (finding that claims which were subject to arbitration should be dismissed); *Vander v. Epana Networks*, *Inc.*, No. 09 Civ. 4526, 2009 U.S. Dist. LEXIS 66899, at *10 (S.D.N.Y. August 3, 2009) (dismissing an action in favor of arbitration and directing parties to proceed to arbitration).

Accordingly, the Court should dismiss the claims based on the Pending Arbitration.

## II.   **THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO**
## **TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

The Complaint should be dismissed because it fails to state a claim upon which relief can

---

[29] CSA §10.11.

[30] Alternatively, the court could enter a stay pending the outcome of the Pending Arbitration.  *See, e.g., Hughes, Hooker & Co. v. Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc.*, No. 04 Civ. 1859, 2005 U.S. Dist. LEXIS 11381, at *2 (S.D.N.Y. June 9, 2005) (finding that because there was a valid arbitration clause and claims were within the scope of the clause, the proceeding would be stayed pending arbitration).

be granted pursuant to Rule 12(b)(6) for at least three reasons. **First**, the Complaint fails to articulate a basis to pierce Jett's corporate veil and reach the individual Defendants. **Second,** the Complaint fails to allege fraud with the requisite particularity. **Third**, the claims are disguised breach of contract claims that are not properly asserted as fraud claims.

### A. Legal Standard.

To survive a motion to dismiss under Rule 12(b)(6), Plaintiff must allege sufficient facts that, if accepted as true, state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. at 662 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663. A pleading based on "labels and conclusions," "formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement" will not suffice. *Id.* at 678 (internal quotations omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007). The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Iqbal*, 556 U.S. at 678 (explaining that merely conclusory allegations are "not entitled to be assumed true"). Before filing a responsive pleading, a defendant may move to dismiss a complaint pursuant to Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

In considering the claims, a court may consider the facts alleged in the Complaint, documents attached as exhibits and documents incorporated by reference into the Complaint. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104 at 111 (2d Cir. 2010).

Rule 9(b) imposes a heightened particularity pleading standard in cases where the plaintiff alleges fraud. *DeBlasio v. Merrill Lynch & Co., Inc.*, No. 07 Civ 318, 2009 WL 2242605, at *12 (S.D.N.Y. July 27, 2009). Rule 9(b) requires the plaintiff to "(1) specify the statements that the

plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Marketxt Holdings Corp. v. Engel & Reiman, P.C.*, 693 F. Supp. 2d 387, 393 (S.D.N.Y. 2010).

The Second Circuit construes this requirement for pleading fraud strictly, such that the facts alleged in the complaint must "give rise to a strong inference of fraudulent intent." *Id.*; *Rosner v. Bank of China*, No. 06 CV 13562, 2008 WL 5416380, at *4 (S.D.N.Y. Dec. 18, 2008). In addition, "[w]here multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." *DeBlasio*, 2009 WL 2242605, at *10 (quoting *DiVittorio v. Equidyne Extractive Indus.*, Inc., 822 F.2d 1242, 1247 (2d Cir. 1987)).

### B. Plaintiff Fails To Allege A Basis To Pierce The Corporate Veil And Hold Defendants Liable For Claims Only Properly Asserted Against The Corporation.

The entire Complaint seeks to hold the *individual* Defendants liable for alleged wrongs committed by a corporation in connection with a contract executed by the corporation.[31] However, the Complaint is devoid of any allegations to support a veil piercing claim. *See Millenium Cost., LLC v. Loupolover*, 44 N.Y.S.2d 110 at 111 (2d Dept. 2007) (affirmed lower court finding that there was no basis to pierce to corporate veil of a company to hold its president and sole shareholder personally liable). In diversity cases, courts apply the choice of law rules of the forum state to determine which law governs alter ego or piercing the corporate veil analysis. *Partner Reinsurance Co. v. RPM Mortg., Inc.*, No. 18 Civ. 5831, 2020 U.S. Dist. LEXIS 212519, at *20 (S.D.N.Y. November 13, 2020). New York choice of law rules provide that the law of the state of incorporation—in this case, Delaware—will be applied when determining whether to pierce the

---

[31] Compl. ¶ 23.

corporate veil. *See id.*[32]   To survive a motion to dismiss, a plaintiff must allege an abuse of corporate form which demonstrates that the controlling owners operated the company as an "incorporated pocketbook" which they used to shield themselves from liability. *Official Comm. of Unsecured Creditors v. Bay Harbour Master Ltd. (In re BH S&B Holdings LLC)*, 420 B.R. 112, 141 (Bankr. S.D.N.Y. 2009) (applying Delaware law).

Courts applying New York and Delaware law have routinely declined to pierce the corporate veil where plaintiffs present no allegations of the disregard of corporate formalities, inadequate capitalization, intermingling of funds or property, reduced discretion by any entity, failure to deal at arms' length, or payment of the debts of one entity by another. *Ayco Co., L.P. v. Frisch,* No. 1:11-CV-580, 2012 U.S. Dist. LEXIS 2112, at *29 (N.D.N.Y. January 9, 2012) (citing *In re Amaranth Natural Gas Commodities Litig.*, 587 F. Supp. 2d 513, 538 (S.D.N.Y. 2008)); *See also In re Parmalat Sec. Litig.*, 375 F. Supp. 2d 278, 269-97 (S.D.N.Y. 2005) (declining to pierce the corporate veil where the plaintiff did not allege "an intermingling of funds or failure to adhere to corporate formalities"); *Microstrategy Inc. v. Acacia Research Corp.*, No. 5735-VCP, 2010 Del. Ch. LEXIS 254, at *45-49 (Del. Ch. 2010) (finding that a veil piercing argument did not suffice when the complaint merely pled in a conclusory fashion that one company was the alter ego of another); *see Bay Harbour Master Ltd.*, 420 B.R. at  141 (finding veil-piercing claims as insufficient to survive a motion to dismiss because they did not justify disregarding the corporate form).

Plaintiff fails to allege any of the above in the Complaint.  Instead, Plaintiff's only approach

---

[32] This court may apply either Delaware or New York law given the similarity of the standards for veil-piercing. *See S.J. Berwin & Co. v. Evergreen Entm't Grp,* No. 92 Civ. 6209, 1995 U.S. Dist. LEXIS 15155 (S.D.N.Y October 12, 1995); *Dover Ltd. v. A.B. Watley, Inc.*, No. 04 Civ. 7366, 2006 U.S. Dist. LEXIS 76004, at *9 (S.D.N.Y. Oct. 18, 2006).

is to purport that the Defendants do business "through" Jett.[33] Even allegations that do assert that individual defendants exercised "domination and control" over a business alone are not enough and the Complaint falls far short in this capacity. *See First Sterling Corp. v. Union Square Retail Trust*, 102 A.D.3d 490, 490 (1st Dept 2013) (holding that conclusory allegations of domination and control by individuals over single purpose entities were insufficient to pierce the corporate veil); *Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC,* 975 F. Supp. 2d 392, 405 (S.D.N.Y. 2013) (explaining that under Delaware law, and at the motion to dismiss stage, conclusory allegations of mere domination and control are insufficient to pierce the corporate veil).

Accordingly, the Court should dismiss the Complaint for failure to plausibly allege any basis to impose personal liability on the Defendants for acts carried out by a corporate entity under contract.

## C. Fraud Claims That Are Disguised Contract Claims Must Be Dismissed.

It is well-settled that a plaintiff may not "dress up a breach-of-contract claim as a fraud claim." Wiener v. Fireman's Fund Ins. Co., No. 14-CV-3699, 2015 U.S. Dist. LEXIS 194286, at *10-11 (E.D.N.Y June 15, 2015) (dismissing claims for fraudulent inducement and fraudulent misrepresentation because they were duplicative of an existing breach of contract claim).

In order for a fraud claim to survive as non-duplicative of a claim for breach of contract, the alleged fraudulent statements must be "collateral" or "extraneous" to the contract to the extent that such allegations support an independent tort claim. *See Wiener*, 2015 U.S. Dist. LEXIS 194286, at *16 (finding that allegedly false communications, reports, and promises "dressed up" a breach of contract claim because they all related precisely to the evaluation and processing of plaintiff's insurance claim). Such a false promise is only actionable as fraud if the promised

---

[33] Compl. ¶¶ 2,3.

13

performance is outside the terms of any contract between the parties. *See Triton Partners v. Prudential Sec.*, 301 A.D.2d 411, 411 (1st Dept 2003) (finding that even if plaintiff's conflicting allegations were found to be collateral to an engagement letter, plaintiff's claim of reasonable reliance on the defendant's promise to proceed with the transaction was "belied" by the provisions of the engagement letter); *Glanzer v. Keilin & Bloom LLC*, 281 A.D.2d 371, 372 (1st Dept 2001) (finding that plaintiff's allegations that they were recruited and then induced to remain with defendant investment banking firm by false promises of substantial compensation consistent with industry standards did not state a cause of action for fraud because there was no showing of a misrepresentation collateral to the alleged breach of contract).

Plaintiff's allegations in the Complaint regarding Defendants' alleged statements are neither collateral nor extraneous. Specifically, the Complaint alleges that Defendants represented that Jett had the authority to lease cargo capacity[34] when they in fact did not.[35]  The Complaint also alleges that Defendants made fraudulent statements in connection with the offering of alternative flights.[36]  None of these allegations suggest any alleged misrepresentations were made outside the terms of what was contracted to: the provision of charter flights to transport cargo. [37] *See Remcoda, LLC v. Ridge Hill Trading,* No. 21 Civ. 979, 2022 U.S. Dist. LEXIS 35979, at *30 (S.D.N.Y. March 1, 2022) (finding that a fraudulent misrepresentation claim about the inventory referenced in a purchase agreement was not collateral and therefore the claim should be dismissed).

---

[34] Compl. ¶¶ 9, 13.

[35] Compl. ¶ 39.

[36] Compl. ¶¶ 20, 21.

[37] Compl. ¶¶ 24,49, 50, 71, 93.  Moreover, the allegations that Defendants made misrepresentations *after* the alleged breach, with respect to the scheduling of alternative flights, could not give rise to a claim for fraudulent inducement, as a fraudulent inducement claim must be based on representations made prior to entering a contract. *See Currier, McCabe & Assocs. v. Public Consulting Group, Inc.*, 2014 U.S. Dist. LEXIS 29302, at *17 (N.D.N.Y. 2014) ("To maintain a cause of action for fraudulent inducement of contract, a plaintiff must show a material representation, known to be false, made with the intention of inducing reliance, upon which [it] actually relie[d], consequentially sustaining a detriment.").

Accordingly, the claims must be dismissed for failure to state a plausible claim, as they are disguised breach of contract claims.

### D.  **The Allegations Lack The Particularity Required To Plead Fraud.**

The Complaint fails to state a claim upon which relief can be granted because Plaintiff fails to plead fraud with the requisite particularity under Rule 9(b). *Amaranth*, 587 F. Supp. 2d at 528. Such a pleading standard is meant to provide Defendants with fair notice of the claim, safeguard their reputations from "improvident" charges of wrongdoing, and protect them against strike suits. *Id.* at 528. The standard set forth in Rule 9(b) applies to Plaintiff's fraudulent inducement and fraudulent misrepresentation claims. *Eaves v. Designs for Fin.*, *Inc.*, 785 F. Supp. 2d 229, 246-247 (S.D.N.Y. 2011) (finding that the heightened pleading standard for fraud applies to claims for fraudulent inducement); *Dunham v. Covidien LP*, No. 19 Civ. 2851, 2019 U.S. Dist. LEXIS 206354, at *12 (S.D.N.Y. November 27, 2019) (finding that the heightened pleading standard for fraud applies to claims for fraudulent misrepresentation).

Plaintiff fails to plead fraud with particularity. Although Plaintiff alleges that Defendants made statements about Jett's ability to schedule the Flights and a purported agency relationship with Astral, Plaintiff fails to mention any specific details regarding the statements, where the statements were made, to whom and to include any other detail other than allegations that the statements were allegedly false. Such threadbare allegations are wholly insufficient to defeat a motion to dismiss. *Granda v. Trujillo*, No. 18 Civ. 3949, 2019 U.S. Dist. LEXIS 14884, at *29 (S.D.N.Y. January 30, 2019) (dismissing claims of actual fraudulent conveyance because allegations were too "threadbare" to be viewed as signals of fraud).

Moreover, Plaintiff fails to plead fraud with particularity because Plaintiff fails to

distinguish between statements made by each Defendant.[38]  Where multiple defendants are asked to respond to allegations of fraud, the complaint should "inform each defendant of the nature of [its] alleged participation in the fraud."  *Leemon v. Burns*, 175 F. Supp. 2d 551, 556 (S.D.N.Y. 2001) ("[A] complaint alleging fraud against multiple defendants must state the allegations specifically attributable to each individual defendant."); *DiVittorio,* 822 F.2d at 1247 (2d Cir. 1987); *accord Polar Intern. Brokerage Corp. V. Reeve*, 108 F. Supp. 2d 225, 237 (S.D.N.Y. 2000). The Complaint makes no attempt to differentiate between each Defendant's participation in the alleged fraud.  It instead clumps both Defendants together and makes general, redundant and vague allegations that they made false statements about Jett's ability to schedule the Flights.[39]  This is not enough to plead fraud. *Polar*, 108 F. Supp. 2d at 237  (explaining that the requirements of Rule 9(b) are "not satisfied by a complaint in which defendants are clumped together in vague allegations." ) (quoting *Ellison v. Am. Image Motor. Co.*, 36 F. Supp. 2d 628, 640 (S.D.N.Y. 1999)).

Accordingly, the Complaint must be dismissed for failure to meet the heightened pleading requirement for fraud under Rule 9(b).

### III.    THIS COURT DOES NOT HAVE PERSONAL JURISDICTION OVER THE NON-RESIDENT DEFENDANTS

This court should dismiss the Complaint because there is no personal jurisdiction over the non-resident Defendants who have no connection to the state of New York.

#### A.  Legal Standard.

In diversity cases, courts apply the law of the forum state to determine whether personal jurisdiction exists.  *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 183–84 (2d Cir. 1998).  As

---

[38] *See, e.g.*, Compl. ¶¶ 4-13, 24,32, 37, 38, 41, 43, 55.
[39] Compl. ¶¶ 6,7,10,11.

such, this Court must determine whether New York's Civil Practice Law and Rules (the "CPLR") provide for jurisdiction. See N.Y. C.P.L.R. §§ 301, 302.   A two-fold inquiry is therefore required. First, the court must determine whether New York law permits the exercise of personal jurisdiction over a non-resident defendant. Second, if jurisdiction is proper under New York law, the court must determine whether exercising jurisdiction over the defendant comports with due process. *See International Shoe Co. v. Washington*, 326 U.S. 310 (1945); *see also Twine v. Levy*, 746 F. Supp. 1202, 1204 (E.D.N.Y. 1990).

The Due Process Clause of the Fourteenth Amendment to the United States Constitution permits personal jurisdiction over a defendant in any State with which the defendant has 'certain minimum contacts . . . such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."' *Calder v. Jones*, 465 U.S. 783, 788 (1984); *International Shoe*, 326 U.S. at 316; *see also Chew v. Dietrich*, 143 F.3d 24, 28 (2d Cir. 1998) (Martin, J.) (quoting same).

Here, the Complaint lacks any allegations to support a finding of personal jurisdiction over the Defendants.

## B.  This Court Does Not Have Personal Jurisdiction Over The Defendants Pursuant To Section 302 Of The CPLR.

New York's long-arm statute, CPLR § 302(a) provides that a court may exercise personal jurisdiction over a non-domiciliary who in person or through an agent: (1) transacts any business within the state or contracts anywhere to supply goods or services in the state; or (2) commits a tortious act within the state; or (3) commits a tortious act without the state causing injury to person or property within the state. CPLR § 302(a). Defendants have not transacted any business within the state, the CSA does not involve services in New York and Defendants were not located in New York when the alleged "injury" occurred. Plaintiff therefore has not demonstrated that the Court

has personal jurisdiction over Defendants under CPLR § 302(a)(1) and (2).

The question then becomes whether this Court has personal jurisdiction over the Defendants pursuant to CPLR § 302(a)(3). CPLR § 302(a)(3) permits courts to exercise specific jurisdiction over a non-domiciliary that commits a tortious act outside New York State but causes harm to someone in the state if either of two conditions are present: (i) the defendant regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state or (ii) the defendant "expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." CPLR § 302(a)(3)(i)-(ii).

First, Plaintiff fails to demonstrate that Defendants' alleged conduct caused harm or injury in New York. To determine if personal jurisdiction exists, courts generally use a "situs of the injury test" which considers the location of the original event which caused the injury rather than the location where the resultant damages are felt by the plaintiff. *Whitaker v. American Telecasting, Inc.*, 261 F.3d 196, 209 (2d Cir. 2001). The situs of the injury is where the underlying, original event causing the injury took place, and is to be distinguished from both the initial tort and its final economic consequences. *Baptichon v. Nevada State Bank*, 304 F. Supp. 2d 451, 460 (E.D.N.Y. 2004), aff'd, 125 F. App'x 374 (2d Cir. 2005) (summary order). Neither Defendant was located in New York when they allegedly spoke to Plaintiff. In addition, Plaintiff's allegations fail to mention where the injury took place. Even if Plaintiff were to mention that the injury took place in New York because Unique is a New York-based company, this would not be enough to meet the requirements of the CPLR. *See Muraco v. Sandals Resorts Int'l*, No. 14-CV-4896, 2015 U.S. Dist. LEXIS 172156 (E.D.N.Y December 28, 2015) ("It is well-settled that residence or domicile of the injured party within [New York] is not a sufficient predicate for jurisdiction under section

302(a)(3).").

Second, neither subcondition of section 302(a)(3) is met. The first subcondition is not relevant because the Defendants do not regularly conduct business in New York. And although the lack of injury in New York precludes finding personal jurisdiction under CPLR § 302(a)(3)(ii), Plaintiff also fails to allege that Defendants expected or reasonably should have expected that the act would have consequences in the state and that Defendants derive substantial revenue from interstate or international commerce. Plaintiff is unable to make a prima facie showing of personal jurisdiction under CPLR 302 because Plaintiff does not allege that Defendants committed a tortious act outside New York that causes injury in New York. *See Paraco Gas Corp. v. Ion Bank*, No. 20 CV 4971, 2021 U.S. Dist. LEXIS 125358, at *15 (S.D.N.Y. July 6, 2021) (finding that allegations lacking in situs of the injury were not enough to plead personal jurisdiction).

In sum, the Complaint is completely devoid of allegations showing that CPLR 302 is satisfied. *See e.g. Milton v. Wazed*, No. 16-CV-4542, 2018 WL 2074179, at *4 (E.D.N.Y. March 30, 2018) ("No allegations in the pleadings support jurisdiction under this provision. Plaintiff alleges that [the defendant] is a resident of New Jersey, not New York"); *Papadopoulos v. Tenet Good Samaritan Inc.*, No. 08 Civ. 989, 2008 WL 4452345, at *1, 3 (S.D.N.Y Oct. 1, 2008) (there was no jurisdiction under CPLR 302 where, "the complaint makes no allegations with respect to personal jurisdiction").

### C.  Even If The Court Finds That CPLR 302 Is Satisfied, The Exercise Of Personal Jurisdiction Over Defendants Does Not Comport With The Requirements Of Due Process.

Even if this Court were to find that there is personal jurisdiction over the Defendants pursuant to section 302 of the CPLR, exercising jurisdiction over the Defendants does not comport with due process because Defendants' conduct does not establish necessary minimum contacts.

When judging minimum contacts, courts focus on the relationship among the defendant,

the forum and the litigation. *Calder*, 465 U.S. at 788 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). *See also Chew*, 143 F.3d at 28 (quoting same). To establish minimum contacts, Plaintiff must first show that the claim arises out of or relates to Defendants' contacts with New York. *See Chaiken v. VV Publ'g Corp.*, 119 F.3d 1018, 1027 (2d Cir. 1997) (Leval, J.). *See also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, (1984); *Chew*, 143 F.3d at 28 (quoting *Chaiken*, 119 F.3d at 1027). Plaintiff must also show that Defendants "purposefully availed" themselves of the privilege of doing business in New York and "could foresee being 'haled into court' there." *Id.* If Defendants' conduct satisfies both requirements, the court will then consider whether the assertion of jurisdiction "comports with 'traditional notions of fair play and substantial justice' -- that is, whether it is reasonable under the circumstances of a particular case." *International Shoe*, 326 U.S. at 316.

Here, Defendants did not "purposefully avail" themselves of the privilege of doing business in New York, nor are there any allegations to that effect. *Burger King v. Rudzewicz,* 471 U.S. 462 (1985). Defendants' relationship to New York—if any—is remote. Defendants are neither domiciled in New York nor regularly engage with business there. *C.f. Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 , 773 (1984) (finding that a magazine publisher's "regular" monthly circulation of 10,000 to 15,000 copies in New Hampshire was "sufficient to support an assertion of jurisdiction in a libel action based on the contents of the magazine."). One contractual arrangement is also not enough to support purposeful availment. *See Sayeedi v. Walser*, 15 Misc. 3d 621, 835 N.Y.S.2d 840 (Civ Ct, Richmond County 2007) (holding that a single transaction conducted online between two members where one was a resident of New York, without more, was not enough to constitute purposeful availment to justify summoning across state lines to a New York court).

Were this Court to find that Defendants have established minimum contacts in New York,

determining that a New York court has personal jurisdiction over the Defendants would still offend the traditional notions of fair play and substantial justice. The determination of the reasonableness of the exercise of jurisdiction depends on an evaluation of several factors: the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief.  It must also weigh in its determination "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies." *Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal.*, 480 U.S. 102 (1987).

The burden on Defendants in this case is a heavy one. To litigate this case would require both Defendants to travel long distances to New York from California and South Africa, but also for Marcell Oberholzer as a resident of South Africa to submit to a foreign judicial system.  *Id.* at 114. ("the unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders"). Such a burden is not justified considering that identical relief is requested in the Pending Arbitration.

## **CONCLUSION**

For the foregoing reasons, the Defendants respectfully request that the Court enter an

order granting the Motion and dismissing Plaintiff's Complaint in its entirety, with prejudice.

Dated: July 6, 2022

By: /s/ Howard S. Steel
Howard S. Steel
Stacy Dasaro
Sari J. Rosenfeld
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Tel. (212) 813-8800
Fax (212) 355-3333
hsteel@goodwinlaw.com
sdasaro@goodwinlaw.com
srosenfeld@goodwinlaw.com

*Attorneys for Defendants*