UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------x

UNIQUE LOGISTICS INTERNATIONAL (NYC), LLC,


                              Plaintiff,

                                                    Docket No.  22-cv-2313

        -against-

BARRY OBERHOLZER and
MARCELL FRANCOIS OBERHOLZER,

                              Defendants.

--------------------------------------------------------------------------x


## MEMORANDUM OF LAW IN OPPOSITON TO DEFENDANTS' MOTION TO DISMISS


ROSS & ASMAR LLC
ATTORNEYS AT LAW


*Attorneys for Plaintiff*
499 Seventh Avenue
23rd Floor South Tower
New York, NY 10018
(212) 736-4202
steven@rossasmar.com

1

# **TABLE OF CONTENTS**

I.      STATEMENT OF FACTS                                                          5


    A.  Plaintiff Sought to Arbitrate This Matter;
Defendants Refused to Arbitrate                                                     7

    B.  Unique Becomes Aware of the Fraud and
Demands Arbitration With Barend Oberholzer
and Marcell Oberholzer                                                              8


ARGUMENT

    II.   ARBITRATION                                                               11

    A.  Defendants Decline To Arbitrate And Have Waived the Right To Arbitrate      11

    B.  Defendants Have Not Moved to Compel Arbitration
and Have Not Manifested Any Intent to Compel Arbitration                            12


    III. PLEADING WITH PARTICULARITY                                                13

    A.  Plaintiff Has Adequately Plead Fraud                                        13


    IV. DEFENDANTS' PERSONAL LIABILITY FOR THEIR ACTIVE

         PARTICIPATION IN THE FRAUD                                                 14


    A. Defendants Can Be Personally Liable For Their Fraudulent Conduct Because They

    Clearly Participated In and Had Knowledge of the Fraud and Made a False

    Representation to Induce the Plaintiff to Enter Into the Transaction            14

V.  THESE FRAUD CLAIMS ARE SPECIFIC, PARTICULAR AND

DISTINGUISHABLE FROM BREACH OF CONTRACT CLAIMS          16


A.  The Fraud Allegations Are Specific and Particular                    16


B.  The Fraud Claims Are Clearly Distinguishable From
    Breach of Contract Claims                                            17



VI.     PERSONAL JURISDICITON                                            19


A.  Defendants Have Waived the Defense of Lack of Personal Jurisdiction   19

B.  This Court Has Personal Jurisdiction Over Defendants:  CPLR 302(a)(1)  20

C.  CPLR 302(a)(3)                                                       22

D.  Defendants Have Significant Contacts With New York                   23

## **TABLE OF AUTHORITIES**

Boss Worldwide LLC v Crabill, 2020 WL 1243805 (SDNY 2020)                12

Gilbert v. Indeed, 513 F. Supp.3d 374 (SDNY 2021)                        12,21

JP Morgan Chase Bank v. Winnick, 350 F. Supp2d 393 (2004)               15

Cohen v. Keonig, 25 F.3d 1168 (1994)                                    15

Marine Midland Bank v John E. Russo Produce Co., Inc. 50 N.Y.2d 31 (1980)   15

Merrill Lynch & Co., Inc. v, Allegheny Energy, Inc., 500 F.3d 171, 184 (2d Cir. 2007)   17

Wild Bunch, SA v. Vendian Entertainment, LLC, 256 F. Supp 3d 497 (SDNY 2017)   18

Apple v. Atlantic Yards Development Co., LLC, 2012 WL 2309028 (EDNY 2012)   18

FRCP Rule 12(b)(2)                                                      19

FRCP Rule 15                                                           19

Berns v. BMI Pub, Inc., 1999 WL 1029711 (S.D.N.Y. 1999)                 19

Mikhlyn v. Bove, 2008 WL 4610304 (E.D.N.Y. 2008)                        19

EDNY Local Rule 7.1                                                    20

Shakour v Federal Republic of Germany, 199 F. Supp2d 8 (EDNY 2022)      20

CPLR 302(a)(1)                                                         20

CPLR 302(a)(3)                                                         22

Int'l Telecom, Inc. v. Generadora Electricia del Oriente, S.A., 2002 WL 1072230   22
(S.D.N.Y. May 28, 2002).

Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir.1981)    25

Wallace Church & Co., Inc. v. Wyattzier, LLC, 2020 WL 4369850 (SDNY 2020)   25

Group One Ltd. v. GTE GmbH, 523 F. Supp 3d 323 (EDNY 2021)              26

Plaintiff Unique Logistics International (NYC) LLC ("Plaintiff" or "Unique"), by its attorneys Ross & Asmar LLC, submits this memorandum of law in opposition to Defendants' motion to dismiss.  Submitted herewith in further opposition is the Declaration of Steven Ross, the Declaration of Sunandan Ray, CEO of Unique, and the Declaration of Marc Schlossberg, Executive Vice President of Unique.  For the reasons set forth herein, it is respectfully submitted that the Defendants' motion to dismiss should be denied in all respects.

I.    STATEMENT OF FACTS

Plaintiff commenced this federal court action against Defendants Barend Oberholzer and Marcell Oberholzer alleging causes of action for fraud, fraudulent inducement and fraudulent misrepresentation.

As is set forth for the herein, the Plaintiff only commenced this action in federal court against the Defendants after the Defendants refused to arbitrate this matter.  The federal court complaint was only filed after the Defendants confirmed in writing (by their counsel) that they did not wish to participate in the arbitration of the claims against them.  Plaintiff's Complaint filed on is annexed to the Ross Declaration which is filed contemporaneously with this memorandum of law as Exhibit "A".

This action arises from fraudulent conduct by Barend Oberholzer (a/k/a Barry Oberholzer) and his brother Marcell Oberholzer (the "Oberholzers" or the "Defendants").  In late November 2021, the Oberholzers (principals of a corporate entity named JETT LLC) reached out Unique, an entity based in Jamaica, New York, to provide cargo air freight services to Unique. On November 26, 2021, Defendant Barry Oberholzer emailed Sunandan Ray and Marc Schlossberg, both officers of Unique regarding air freight cargo services which Jett proposed to

provide to Unique.  Barry Oberholzer's November 26, 2021 email to Sunandan Ray and Marc

Scholssberg is annexed to the Ross Declaration as Exhibit "B".  Annexed to Barry Oberholzer's

November 26, 2021 email (Exhibit "B") was a Non-Exclusive Charter Service Agreement Form

("CSA").  That CSA which was annexed to Barry Oberholzer's November 26, 2021 email is

annexed to the Ross Declaration as Exhibit "C"

      The CSA (Exhibit "C") sent by Barry Oberholzer offered Unique 2 cargo flights on

December 5 and December 8 on a designated aircraft.  The CSA specifically designated 2

specific flight dates from Hanoi, Vietnam (HAN) to Ontario, California (ONT) and specifically

designated the aircraft to be used – B747-4H6 under Registration Number TF-AMM.  That

aircraft is operated by Astral Airways.

      Relying upon the representations sent by Barry Oberholzer (that the designated flights

could be provided on the designated dates using the designated aircraft), Unique advised the

Defendants that it wished to proceed to enter into a Non-Exclusive Charter Service Agreement

Form ("CSA") with JETT LLC, the corporate entity controlled by the Defendants.

      On November 26, 2021, Barry Oberholzer emailed Sunandan Ray and Marc

Schlossberg an invoice for the services to be provided pursuant to the CSA for the designated

Astal Airways flights on December 5, 2021 and December 8, 2021.  Barry Oberholzer's email to

Sunandan Ray and Marc Schlossberg is annexed to the Ross Declaration as Exhibit "D".

Annexed to Barry Oberholzer's November 26, 2021 email (Exhibit "D") was the invoice for the

services pursuant to the CSA.  That invoice sent by Barry Oberholzer is annexed to the Ross

Declaration as Exhibit "E".

      The invoice sent by Barry Oberholzer to Unique again identified the dates of the

designated flights and again specifically identified the designated aircraft to be used in

connection with the cargo charter flights  - the Astral Airways 747 (Reg. TF-AMM).  The invoice sent by Jett required Unique to make payment to Jett at Jett's bank in New York City – at 270 Park Avenue, New York, New York.  See Exhibit "E", annexed to the Ross Declaration.

Relying upon the representations that they could provide the charter cargo flights on the designated aircraft, as had been specially represented in the proposed CSA, Unique agreed to contract for the promised services.  Unique agreed to execute the Non-Exclusive Charter Service Agreement Form ("CSA").  A copy of the executed CSA between Jett and Unique (executed by Defendant Marcell Francois Oberholzer on behalf of Jett) is annexed to the Ross Declaration as Exhibit "F".  Unique wired the requested to funds to Jett's bank account in Manhattan, New York.

A.       Plaintiff Sought to Arbitrate This Matter;
         Defendants Refused to Arbitrate

Jett was not able to deliver the promised services to Unique.  On January 5, 2022, Unique commenced arbitration before the International Court of Arbitration of the International Chamber of Commerce ("ICC") against Jett, the corporate entity. The CSA between Unique and Jett contained an arbitration provision requiring arbitration before the ICC.  See Exhibit "F" annexed to the Ross Declaration.  The ICC arbitration against Jett LLC is pending before Arbitrator Peter Sherwin under ICC Case Docket 26807/PDP.  The ICC arbitration was initially commenced against Jett LLC and alleged causes of action for breach of contract and unjust enrichment. Unique's demand for ICC arbitration, filed January 5, 2022, is annexed to the Ross Declaration as Exhibit "G".

B.   Unique Becomes Aware of the Fraud and Demands Arbitration With Barend Oberholzer and Marcell Oberholzer

After the filing of the ICC arbitration claim, Unique became aware of the blatant fraud that had been committed by Barry Oberholzer, Marcell Oberholzer and Jett.  Unique learned that Jett never had the authorization or ability to offer the flights and aircraft designated in the proposed CSA and the CSA executed by Jett and Unique.  The proposed CSA which Barry Oberholzer emailed to Unique on November 26 and the final CSA which was executed by Marcell Oberholzer identified an aircraft and flight plan which Jett was not authorized to offer.

As is set forth in more detail below, Unique learned that neither Jett not the Oberholzers were authorized to offer the services designated in the CSA (sent to Unique's New York office by Barry Oberholzer and executed by Marcell Oberholzer).  As is set forth above, and as is clear in the CSA, the CSA was an agreement that Jett would provide 2 flights (on December 5 and December 8) on a designated aircraft – the B747-4H6 under Registration Number TF-AMM (which aircraft is operated by Astral Airways).  The problem is that neither Jett nor the Oberholzers could offer that service.  As is set forth below, Astral Airways had issued a public fraud alert warning the public that Jett and the Oberholzers (specifically Barry Oberholzer) were not authorized to offer the flights designated in the CSA.  The following fraud alert (annexed to the Ross Declaration as Exhibit "L") was issued by Astral Aviation on or about December 8, 2021 and placed on Astral's website:

08 DEC FRAUD ALERT
Fraud Alert

It has come to our attention that the Astral Aviation/Network Airline Servies B747-400F bearing Reg No TF AMM has been falsely contracted to perform flights between Vietnam and USA, purportedly by JETT LLC and its CEO, Mr. Barry Oberholzer, who claim to be agents of Astral Aviation.

> Neither Astral Aviation or Network Airline Management have any affiliation with either JETT LLC or Barry Oberholzer, and will not be responsible for any transactions undertaken by the said agent.

See Astral fraud alert annexed to the Ross Declaration as Exhibit "L".  Astral also issued similar fraud alerts on the Linked IN and Twitter platforms.  See Exhibits "M" (Linked In fraud alert) and "N" (Twitter fraud alert) annexed to the Ross Declaration.

When it became apparent to Unique that the Oberholzers had clearly committed fraud (by, among other acts, sending the CSA and invoice with the false representations as to authorization to book the designated cargo flights) and by the execution of the CSA with the false representations as to authorization to book the designated cargo flights), Unique sought to add Barry Oberholzer and Marcell Oberholzer to the ICC arbitration.  Unique made demand for the arbitration of the claims against the Defendants before the ICC.  Plaintiff demanded the addition of these Defendants to the ICC arbitration at the earliest of stages in the ICC arbitration proceeding.  The ICC arbitration was at its earliest stages. Although Arbitrator Peter Sherwin had been agreed upon and appointed, Unique and Jett had not yet finalized the Terms of Reference ("TOR") (the document by which the parties notify the arbitrator of the nature of the case and the various causes of action).  No discovery had been exchanged and no motions or other substantive progress had been made in the ICC arbitration.

As noted above, when the Plaintiff determined that the fraud cause of action against Barry Oberholzer and Marcell Oberholzer was proper, Unique made demand and proposed the addition of the Defendants Barry Oberholzer and Marcell Oberholzer to the pending ICC arbitration proceeding.  By counsel, Unique submitted proposed terms of reference adding Barry Oberholzer and Marcell Oberholzer to the pending ICC arbitration case before Arbitrator

Sherwin.

ON April 6, 2022, ICC Claimant Unique sent a proposed redline of the ICC Terms of Reference ("TOR") in which Unique made demand to add Barend Oberholzer and Marcell Oberholzer as additional respondents in the ICC arbitration.  The proposed redline of the TOR was sent at the direction of Arbitrator Sherwin who directed that as the procedure by which the proposal/demand to add the Oberholzers as additional respondents be made.  The redline of the TOR was sent to counsel for the corporate respondent and Arbitrator Sherwin by email on April 6, 2022.  A copy of the April 6, 2022 email from Steven Ross, counsel for ICC Claimant Unique Logistics International (NYC), LLC to Arbitrator Sherwin and counsel for ICC respondent JETT LLC with proposed redline of the ICC Terms of Reference (TOR) which seeks to add Barend Oberholzer and Marcell Oberholzer as additional respondents in the ICC arbitration is annexed hereto as Exhibit "J".  A copy of the redlined TOR which demands/proposes to add Barend Oberholzer and Marcell Oberholzer as additional respondents in the ICC arbitration is annexed to the Ross Declaration as Exhibit "I".

Because the arbitrator had been selected at the time the demand to add Barend Oberholzer and Marcell Oberholzer as additional respondents in the ICC arbitration was made, Arbitrator Sherwin ruled that ICC rules required the consent of the proposed new parties to join the existing ICC arbitration.

<u>ARGUMENT</u>

II.   <u>ARBITRATION</u>

A.   <u>Defendants Decline To Arbitrate And Have Waived the Right To Arbitrate</u>

When Unique made the demand to arbitrate with the Defendants, if the Defendants had wanted to arbitrate (as they now claim), they could have joined the just filed ICC arbitration. However, the Defendants declined to arbitrate.  Barend Oberholzer and Marcell Oberholzer (by their counsel, Niel Joubert) advised in writing (by Mr. Joubert) that they did not consent to be added as respondents in the ICC arbitration.  By email dated April 13, 2022, counsel for Barend Oberholzer and Marcell Oberholzer advised in writing that Barend Oberholzer and Marcell Oberholzer did not wish to participate in the pending ICC arbitration.  The April 13, 2022 email from counsel Niel Joubert to my office is annexed to the Ross Declaration as Exhibit "K".

In its memorandum in support of the motion to dismiss, the Defendants admit that Plaintiff sought to arbitrate and demanded arbitration of the claims brought herein against the Defendants – Barend Oberholzer and Marcell Oberholzer. At page 5 of the memorandum of law, counsel for the Defendants state: "Plaintiff also attempted to have the Defendants in their individual capacities added to the Pending Arbitration as additional parties."  See Defendants' Memorandum of Law at page 5.

Barend Oberholzer and Marcell Oberholzer declined to join the ICC arbitration.  If the Defendants had wanted to arbitrate (as they now claim), they could have joined the just filed ICC arbitration.  However, the Defendants declined to arbitrate.  The Defendants advised in writing (by their counsel) that they did not consent to be added as respondents in the ICC

arbitration.

As the principals of the corporate entity (Jett LLC), Defendants Barend Oberholzer and Marcell Oberholzer agreed to arbitrate the issues raised in this dispute before Arbitrator Sherwin.  Yet, when demand was made to arbitrate the added claims and when given the opportunity to arbitrate the claims against them individually, they declined to the participate in arbitration.  Defendants had the chance to arbitrate the claims brought herein.  They declined. Defendants' refusal to join the ICC arbitration is a clear waiver of their right to arbitrate.


B. <u>Defendants Have Not Moved to Compel Arbitration and Have Not Manifested Any Intent to Compel Arbitration</u>

Notably, Defendants have not moved to compel arbitration - as might be expected. They did not move to compel arbitration before the ICC (as part of the pending arbitration matter before Arbitrator Sherwin or in another arbitration case).  They only filed a motion to dismiss.

As the Court held in <u>Boss Worldwide LLC v Crabill</u>, 2020 WL 1243805 (SDNY 2020), "[d]epending on the facts and arguments presented, a motion to dismiss based on an arbitration clause may be treated as a motion to compel arbitration.  In <u>Gilbert v. Indeed</u>, 513 F. Supp.3d 374 (SDNY 2021), the Court held:

> The Second Circuit has recognized that, depending on the facts and arguments presented, a motion to dismiss based on an arbitration clause may be treated as a motion to compel arbitration[.]  The motion must either "explicitly or implicitly ask[ ] the court to order arbitration."
>
> Where such a request is made and a movant thus manifests "an intent ... to compel arbitration," the Court may "treat[ ] motions to dismiss based on mandatory arbitration clauses as motions to compel arbitration." (citations omitted).

<u>Gilbert</u> makes clear that the party must manifest the intent to compel arbitration.  Here, the Defendants have not manifested an intent to compel arbitration.  They refused arbitration.  They

had the opportunity and refused.  Clearly, the Defendants do not want to arbitrate.  That is fine.

But, that does not mean that they can escape individual liability for the fraud claims which have

been properly brought against them.

In their brief, Defendants claim that "although Defendants are not signatories to the

CSA, they are still entitled to invoke its protections because the claims asserted are intertwined

with the claims in the arbitration."  See Defendants' memorandum of law at page 8.  Defendants'

counsel is correct in that the Defendants did have the right to arbitrate before the ICC – a right

which they waived.  Unique made demand to add Barend Oberholzer and Marcell Oberholzer to

the arbitration.  Unique fought to add Barend Oberholzer and Marcell Oberholzer to the ICC

arbitration. They refused.  Barend Oberholzer and Marcell Oberholzer have clearly and

unambiguously waived their right to arbitration.  As such, the motion to dismiss should be

denied.

III.  PLEADING WITH PARTICULARITY

A.  Plaintiff Has Adequately Plead Fraud

Defendants argue that the Plaintiff has not adequately alleged fraud.  To the contrary,

Plaintiff has adequately pled its cause of action for fraud with detailed particularity and

specificity.  Plaintiffs identify the fraudulent statement, exactly *who* sent the fraudulent

statement, *when* it was sent, and *to whom* the fraudulent statement was sent.  To suggest that the

Plaintiff has not alleged the specifics and details of the fraudulent statement is ridiculous.

Defendants sent the CSA to Unique in which the Defendants represented (falsely) that

Jett LLC had the ability and authority to provide air freight cargo services utilizing a designated

aircraft - the B747-4H6 under Registration Number TF-AMM (which aircraft is operated by Astral Airways).  That representation in the CSA was false.

The CSA and the false statement therein was made and sent to Unique by both Barry Oberholzer (in the November 26 email which annexed the CSA with the false statements) and by Marcell Oberholzer (who executed the CSA which contained the false representation regarding the authorization for provide the designated services) contained the false statement that Defendants had the ability and authority to provide air freight cargo services utilizing a designated aircraft - the B747-4H6 under Registration Number TF-AMM (which aircraft is operated by Astral Airways).

Defendants specifically represented in writing in the CSA that JETT had the authority to arrange for cargo on the designated Astral 747 aircraft.  Unique relied on this representation. The representation was patently and demonstrably false as evidenced by the fact that Astral Airways issued a fraud alert warning the public that Defendants had no authority to act as an agent or book cargo on that designated Astral Airways aircraft.  It is not credible to suggest that the fraud claims are vague in any way.


## IV.  DEFENDANTS' PERSONAL LIABILITY FOR THEIR ACTIVE PARTICIPATION IN THE FRAUD


A. <u>Defendants Can Be Personally Liable For Their Fraudulent Conduct Because They Clearly Participated In and Had Knowledge of the Fraud and Made a False Representation to Induce the Plaintiff to Enter Into the Transaction</u>

Defendants claim that they cannot be held personally liable for their fraudulent conduct simply because the CSA was executed in the name of the corporate entity or because the

Plaintiff did not allege a cause of action to pierce the corporate veil is not accurate.  Defendants'

arguments are wholly misplaced.  Plaintiff seeks to hold the Defendants liable for their personal

role (their active participation) in the fraud.

In JP Morgan Chase Bank v. Winnick, 350 F. Supp2d 393 (2004), Judge Lynch held

that corporate officers or directors can be personally liable for fraudulent acts where they had

personal knowledge of or involvement in the fraud.  Judge Lynch denied the relevant portion of

the defendants' motion to dismiss, holding that "At the pleading stage, it is appropriate to allow

the plaintiffs' claims to proceed against these defendants on the assumption that persons

occupying such positions in the company would have knowledge of both the fraud . . . ."  350 F.

Supp2d at 400.

The Second Circuit ruled similarly in Cohen v. Keonig, 25 F.3d 1168 (2d Cir.  1994).

In that case the Court held that dismissal of the complaint was in error where it is alleged that the

corporate officers or directors participated in or had actual knowledge of the fraud.  Defendants

can be liable for fraud if they participate in the fraud or if they have actual knowledge of the

fraud.  This is the law as set forth by the New York Court of Appeals in Marine Midland Bank v

John E. Russo Produce Co., Inc. 50 N.Y.2d 31 (1980).

Here, there is no doubt that the Defendants participated in the fraud.  The Defendants

(brothers) are the principals of the closely held corporate entity.  In fact, Barry Oberholzer was

individually named (in addition to the corporate entity) in the fraud alert issued by Astral.

Plaintiff did not bring an action to pierce the corporate veil -yet.  This fraud action seeks to hold

these Defendants liable for their active participation in the fraud.

Barry Oberholzer personally sent the November 26 email with the CSA to Sunandan

Ray and Marc Schlosberg.  That CSA contained a fraudulent representation – a representation

15

that Jett had the ability and authorization to provide the designated services offered.  Marcell

Oberholzer personally executed the CSA (Exhibit "F").  He personally participated in the fraud.

For these reasons, because they personally participate in the fraudulent conduct, which the

Plaintiff relied upon to its detriment, and which caused substantial damages, the Plaintiff may

proceed against the Defendants.

Further, as is set forth more fully in Section V (B),  below each of the Defendants are

personally liable in that each Defendant personally made false representations to the Plaintiff in

order to induce the Plaintiff to enter into the transaction with the entity.  This argument is

addressed in Section V (B), below.


## V.   FRAUD CLAIMS ARE SPECIFIC, PARTICULAR AND DISTINGUISHABLE FROM BREACH OF CONTRACT CLAIMS

### A.   The Fraud Allegations Are Specific and Particular

Here, the allegations of fraud are specific as can be.  There can be no legitimate

dispute that the Defendants falsely represented that they the ability and authority to contract to

provide certain services set forth in the CSA – to provide the designated aircraft - the B747-4H6

under Registration Number TF-AMM (which aircraft is operated by Astral Airways).

Plaintiff has specifically identified the false statement (the statement in the CSA

regarding the authority to book air freight cargo on the designated aircraft), where it was made

(in, among other places,  the sending of the CSA (Barry Oberholzer), and the execution of the

CSA (Marcell Oberholzer)), when it was sent (November 26 when Barry Oberholzer sent the

CSA and November 29 when Marcell Oberholzer sent the executed CSA), how it was made (in

writing in the CSA, and to whom it was made (to Unique, sent by email to Sunandan Ray and

Marc Schlossberg).

There can be little doubt that the statement made by the Defendants that they had the authority and the ability to contract for the identified and designated aircraft was fraudulent. Astral has issued a fraud alert specifically identifying Barend Oberholzer (and the entity controlled by both Defendants, and for which Marcell Oberholzer executed the CSA) as fraudsters who did not have such authority. These allegations are not "threadbare." The false statement and by whom it was made, to whom it was made and when it was made have all been identified. The fraudulent statement has identified and has been plead with particularity.

B. The Fraud Claims Are Clearly Distinguishable From Breach of Contract Claims

Defendants claim that the fraud claims asserted in the Complaint are indistinguishable from the contract claims asserted in the ICC arbitration against Jett.

This case is about fraud, fraudulent misrepresentation and fraudulent inducement. Those are the three causes of action asserted in this lawsuit. These fraud causes of action are separate and distinct from any breach of contract claim. The causes of action asserted in the Complaint do not allege any breach of the agreement – they allege that the agreement itself was a fraud, and that the agreement was fraudulently induced.

In Merrill Lynch & Co., Inc. v, Allegheny Energy, Inc., 500 F.3d 171, 184 (2d Cir. 2007), the Second Circuit ruled that "New York distinguishes between a promissory statement of what will be done in the future that gives rise only to a breach of contract cause of action and a misrepresentation of a present fact that gives rise to a separate cause of action for fraudulent inducement. Hence, a claim based on fraudulent inducement of a contract is separate and distinct from a breach of contract claim under New York law."

Citing the Merrill Lynch case, Judge Rakoff of the Southern District denied defendant's motion to dismiss in Wild Bunch, SA v. Vendian Entertainment, LLC, 256 F. Supp 3d 497 (SDNY 2017).  In that case, Judge Rakoff ruled that "a plaintiff who was induced to enter into a contract with a company due to fraudulent misrepresentations by that company's president may assert a fraudulent inducement claim against the president."  The Court ruled that where a party alleges (as here) that it was induced to enter into a transaction because a defendant misrepresented material facts, the plaintiff has validly stated a claim for fraud even where the same circumstances give rise or may give rise to a breach of contract claim.  See also Apple v. Atlantic Yards Development Co., LLC, 2012 WL 2309028 (EDNY 2012) ("a plaintiff who is induced to enter into a contract with a company due to fraudulent misrepresentations by that company's president may assert a fraudulent inducement claim against the president.")

These cases are directly on point.  Defendants induced the Plaintiff to enter into the CSA by fraudulent means.  Defendants promised a service that they never had any ability or authorization to deliver.  The Defendants knowingly and fraudulently lied about their authorization to act as an agent to Astral Airways (and their ability to lease the designated 747 aircraft) to induce the Plaintiff to enter into the CSA.  Defendants promised a service which they could never have provided and induced the Plaintiff to enter into a contract based on this fraudulent promise.  These were misrepresentations about *present fact* – not about what the party would do in the future.

As summarized by Judge Rakoff in denying the motion to dismiss in Wild Bunch, "Such statements are not promissory statement[s] of what will be done in the future, but are instead "misrepresentation[s] of a present fact," made to induce the counter-party to enter the contract."  (citations and quotations omitted).  256 F. Supp 3d at 506.

Here, the Defendants made the false statements of present fact to induce the Plaintiff to enter into the agreement and are not shielded or insulated from liability for their fraudulent activity.

## V.  PERSONAL JURISDICITON

### A.      Defendants Have Waived the Defense of Lack of Personal Jurisdiction

A motion to dismiss for lack of personal jurisdiction is properly brought pursuant to FRCP Rule 12(b)(2). In their Notice of Motion, Defendants here only seek dismissal of the Complaint pursuant to Rules 12(b)(6) and 9(b). FRCP Rule 7(b)(1) requires that all motions "state with particularity the grounds for seeking the order" and "state the relief sought." "Defendants cannot be granted relief they did not seek in their Notice of Motion. *See* Berns v. BMI Pub, Inc., 1999 WL 1029711 *10 (S.D.N.Y. 1999) ("If the relief is not requested by the notice of motion, then the movant does not get that relief."); *see also* Mikhlyn v. Bove, 2008 WL 4610304 *1, fn. 1 (E.D.N.Y. 2008). As Defendants did not seek dismissal on the basis of a lack of personal jurisdiction in their notice of motion, they cannot be granted that relief now.

By failing to seek Rule 12(b)(2) relief in the notice of motion, Defendants have waived that defense. Rule 12(h) provides that a defense pursuant to Rule 12(b)(2) is waived by "(A) omitting it from a motion in the circumstances described in Rule 12(g)(2); or (B) failing to either: (i) make it by motion under this rule; or (ii) include it in a responsive pleading or in an amendment allowed by Rule 15(a)(1) as a matter of course." Rule 12(g)(2) prohibits successive motions to dismiss under Rule 12 "raising a defense or objection that was available to the party but omitted from its earlier motion."

Defendants' failure to notice the relief sought in the notice of motion also violates Local Rule 7.1 (a)(1) which requires the movant to specify the relief south in the motion.

    B.  <u>This Court Has Personal Jurisdiction Over Defendants:  CPLR 302(a)(1)</u>

Defendants conduct falls within the New York long arm statute CPLR 302(a)(1) which authorizes the exercise of jurisdiction where a person transacts any business within the state or contracts anywhere to supply goods or services in the state.  The elements to satisfy jurisdiction under CPLR 302(a)(1) were summarized in <u>Shakour v Federal Republic of Germany</u>, 199 F. Supp2d 8 EDNY (2022).  In that case, Judge Spatt wrote:

> Section 302 provides long-arm jurisdiction in New York. Section 302(a)(1) sets forth a two-prong test for determining personal jurisdiction. In particular, a court may exercise personal jurisdiction over any non-domiciliary "who in person or through an agent ... transacts any business within the state or contracts anywhere to supply goods or services in the state," but only "[a]s to a cause of action arising from" the transaction in question. N.Y. C.P.L.R. § 302(a)(1). In other words, a plaintiff who seeks to rely on Section 302(a)(1) must show that (1) the defendant supplied goods or services in the state and (2) the cause of action arises from that transaction. (citations omitted).

Here, Defendants (through the entity which they control) contacted Unique in New York to provide services to Unique in New York, satisfying the second element of CPLR 302(a)(1). (While it is true that it was contemplated that the inventory was supposed to have been flown to California, the Defendants reached out to, contracted with, provided the service to the New York company).  The services – the benefit of the transaction – was provided to the New York company.  These services that were provided (or to be provided) were provided to the New York entity and are the basis of this federal lawsuit.  Thus, the Court has jurisdiction under CPLR 302(a)(1).

That the Defendants may have acted through the corporate entity (Jett LLC) to

commit the fraud does not mean that the Court cannot exercise personal jurisdiction over the

Defendants.  In <u>Gilbert v. Indeed</u>, 513 F. Supp.3d 374 (SDNY 2021), Judge Liman of the

Southern District of New York held:

> Unlike CPLR § 301, CPLR § 302 allows courts to exercise specific jurisdiction over corporate principals based on transactions made or acts taken in a corporate capacity." *Wallace Church*, 2020 WL 4369850, at *6; *see Retail Software Servs. Inc. v. Lashlee*, 854 F.2d 18, 22 (2d Cir. 1988) (upholding long-arm jurisdiction over corporate employees who were the "primary actors" in the transaction in New York that was the source of the litigation) (citing *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 527 N.Y.S.2d 195, 522 N.E.2d 40, 47 (1988).

Here, it is beyond dispute that the Defendants were the "primary actors" in the

transaction which provided services to the New York entity which gives rise to this lawsuit. The

fraudulent document was sent to New York by the "primary actors" (the Defendants) who are the

sole owners and principals of the corporate entity.  This action clearly arises from the

transaction, satisfying the elements of CPLR 302(a)(1).

In <u>Gilbert v. Indeed</u>, 513 F. Supp.3d 374 (SDNY 2021), the Court clarified that the

non-domicillary defendant need not be physically present in New York "so long as the defendant

has engaged in "purposeful activity," for example, "some act by which the defendant

purposefully avails itself of the privilege of conducting activities within the forum State, thus

invoking the benefits and protections of its laws."

Here, the Defendants clearly purposefully availed themselves of the privilege of

conducting business in New York.  Defendants reached out to Unique in New York.  They did

not reach out over Linked In or some social media website.  Defendants emailed to Sunandan

Ray and Marc Scholssberg, both of whom were officers of Unique (the New York entity)

working in New York for the enticing Unique to enter into a contract by which the Defendants

(through the entity they control) would provide services to Unique in New York.

Because the Defendants contracted to provide services in New York, and because this lawsuit arises from that purposeful availment by the Defendants, the Court may exercise jurisdiction under CPLR 302(a)(1).

     C.  <u>CPLR 302(a)(3)</u>

Defendants' conduct also falls within the New York long arm statute CPLR 302(a)(3).  Defendants committed a tortious act outside of the State of New York– a fraud, causing harm to the Plaintiff in New York State.

The situs of the harm (the injury) is New York.  Defendants committed the fraud which caused the Plaintiff to lose its money.  Courts have ruled that the situs of the injury "is where the critical events associated with the dispute occurred." <u>Int'l Telecom, Inc. v. Generadora Electricia del Oriente, S.A.</u>, 2002 WL 1072230, at *2 (S.D.N.Y. May 28, 2002).

Here, the Defendants sent the fraudulent document to the Plaintiff in New York.  The Plaintiff is located in New York State and incurred its loss in New York State.  Defendants knowingly and purposefully chose to defraud a New York entity – the harm was caused in New York.

Defendants purposefully *and repeatedly* reached out to a New York entity – sending a fraudulent document to the New York entity to entice the New York entity to send money. These acts satisfy the CPLR 302(a)(3) requirement that the Defendants reached out to commit fraudulent acts in New York.  As noted above in <u>Gilbert v. Indeed</u>, 513 F. Supp.3d 374 (SDNY 2021), the fact that the Defendants send the fraudulent document through the entity they control

does not make them immune from suit in New York.  As noted above, the courts permit CPLR 302 long-arm jurisdiction over corporate employees who were the "primary actors" in the transaction in New York that was the source of the litigation.  Here, the primary actors were the fraudsters who sent the fraudulent document which is the source of this litigation.

D.   Defendants Have Significant Contacts With New York

Defendants clearly have a history of transacting business (and committing fraud) in New York.  This can be demonstrated by the fact that Defendant Barry Oberholzer has been indicted and currently faces charges in the United States District Court for the Southern District of New York. The charges in the indictment relate to fraudulent conduct committed by Oberholzer in New York.  The indictment against Barend Oberholzer in the United States District Court for the Southern District of New York (Indictment 21 Crim 475) is annexed to the Ross Declaration as Exhibit "Q".

While the Defendants can baldly assert that they have no contacts with New York, the federal prosecutors in New York and a federal grand jury demonstrate (at least with regard to Barend Oberholzer) otherwise.  Barend Oberholzer clearly has decided to commit his fraudulent conduct upon New Yorkers.  It is respectfully submitted that both Defendants knew that they were committing fraud upon a New York entity in an effort to cause harm to that New York entity by their fraudulent conduct.

Further, the fact that Jett (the entity through which the Defendants committed their fraud) maintains a bank account in Manhattan, New York is strong evidence of the presence in New York.

In addition, the CSA was not the only contractual relationship that the Defendants

proposed to execute to provide services to the Plaintiff in New York.  This was not a "single transaction".  Defendants had proposed a prior agreement to provide services to Unique – the proposed November 23 CSA.  See Exhibit "R" annexed to the Ray Declaration.  This prior proposal is another example of the Defendants again reaching out to New York to solicit Unique's business.

Further, as is set forth below and as is demonstrated by Defendant Barry Oberholzer's December 8, 2021 email (See Declaration of Sunandan Ray and Declaration of Marc Schlossberg and Exhibit "T" to the Declaration of Steven Ross and the Declaration of Marc Schlossberg), the Defendants also specifically contemplated and proposed providing services to Unique which included the delivery of cargo to Unique at JFK airport (New York) and the handling of the cargo in New York.

The exercise of personal jurisdiction over the Defendants is, in no way, offensive to traditional notions of fair play and substantial justice. As noted earlier, one of the Defendants had contacts with New York sufficient enough to get himself indicted in the Southern District of New York. And, both defendants purposefully availed themselves of New York, executing an agreement to provide services to the New York Plaintiff.  Both defendants reached out to the Plaintiff and solicited the Plaintiff's business knowing that the plaintiff and the officers with whom they were communicating were located in New York. Clearly, the Defendants transact business in New York as evidenced by their having established bank accounts in New York City in order to receive payment.

Tellingly, the Defendants submitted no sworn affidavit or other declaration attesting to their lack of contacts with New York.  There is nothing in the record from the Defendants to support the unsupported contention from their counsel that they lack contacts with New York.

While it is the burden of the Plaintiff to demonstrate jurisdiction in the face of a motion to dismiss for lack of personal jurisdiction, where the Court is presented with evidence of the Defendants' contacts with York, and where the Defendants have not submitted any sworn declaration, it is respectfully submitted that the Court need not accept the unsworn contentions of the Defendants' attorney.

At the very least, Plaintiff should be permitted to conduct limited discovery regarding the Defendants' contacts with New York.  In Shakour v Federal Republic of Germany, 199 F. Supp.2d 8 (2022) EDNY, the Court held:  A" district court may decide a motion to dismiss for lack of personal jurisdiction on "the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." citing, Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir.1981).  Here, it is respectfully submitted that the failure of the Defendants to submit any sworn affidavit regarding their contacts with New York precludes dismissal or, at the very least, should permit limited discovery as to the Defendants' contacts with New York.  Plaintiff requests that the Court deny the pending motion.  In the event the Court determines that denial of the motion is not appropriate, Plaintiff requests that the Court conduct a hearing on the issue of the Defendants' transacting of business in New York and the Defendants contacts with New York regarding the issue of jurisdiction.

At this stage of the proceeding, the determination of the issue of personal jurisdiction should be decided in favor of the Plaintiff based solely upon the prima facie allegations submitted by the Plaintiff in response to the Defendants' motion.  As the Court stated in Wallace Church & Co., Inc. v. Wyattzier, LLC, 2020 WL 4369850 (SDNY 2020):

> When that issue is raised at the pleading stage and prior to discovery, plaintiffs need only plead in good faith "legally sufficient allegations of jurisdiction" when challenged by a

jurisdiction-testing motion.  Moreover, "the plaintiff's *prima facie* showing may be established solely by allegations" at this preliminary stage. *Id.* Therefore, at this point in the proceedings, Plaintiffs' allegation that fraudulent representations were made to them by [Defendants] presumptively gives rise to specific jurisdiction over Individual Defendants under CPLR § 302(a)(3) for claims arising out of those alleged misrepresentations. "Once a plaintiff has alleged facts that, if proved, would support jurisdiction, a defendant cannot win a Rule 12(b)(2) motion merely by denying plaintiff's allegations." (citations omitted).

"A *prima facie* case requires non-conclusory fact-specific allegations or evidence showing that activity that constitutes the basis of jurisdiction has taken place." Group One Ltd. v. GTE GmbH, 523 F. Supp 3d 323 (EDNY 2021).

It is respectfully submitted that, in this case, Plaintiff has alleged (and demonstrated) more than sufficient facts to support personal jurisdiction over the Defendants.  In contrast, Defendants seek dismissal without any evidentiary basis - solely upon legal argument in the memorandum of law.  For the reasons set forth herein, the motion should be denied.

Wherefore, Plaintiff requests that the Court deny the pending motion.  In the event the Court determines that denial of the motion is not appropriate, Plaintiff requests that the Court conduct a hearing on the issue of the Defendants' transacting of business in New York and the Defendants contacts with New York regarding the issue of jurisdiction.

.

Dated:      New York, New York
            August 1, 2022

                                        Respectfully submitted,

                                        ROSS & ASMAR LLC
                                        ATTORNEYS AT LAW


                                        By: _____
                                        Steven B. Ross, Esq. (SR 5059)
                                        *Attorneys for Plaintiff*
                                        499 Seventh Avenue
                                        23rd Floor South Tower
                                        New York, NY 10018
                                        (212) 736-4202
                                        steven@rossasmar.com